IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| PAUL DAVID BEARD, JR., ) | |
| ) | Case No. 4:04CV00048 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |
| ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending affirming the Commissioner's final decision denying plaintiff's claim for benefits. Plaintiff filed objections to the Report and Recommendation. I reviewed Judge Crigler's Report and Recommendation, the plaintiff's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I **ADOPT** Judge Crigler's recommendation and **OVERRULE** the plaintiff's objections. The Commissioner's final decision denying the plaintiff's claim for benefits is **AFFIRMED**, and the case is hereby **DISMISSED.**

**STATEMENT OF FACTS**

Plaintiff, Jerry W. Beard ("Beard"), is a 42 year old male with a 10th grade education and a high school General Equivalency Diploma and has past relevant work experience as a forklift driver, a cook and material handler. On March 6, 2003, Beard filed applications for Disability Insurance

1

Benefits and Supplemental Security Income payments, alleging that he had been disabled since December 23, 2002, due to a back injury, high blood pressure and excessive heartburn. His claim was initially denied and on reconsideration, and a request for hearing was timely filed. Beard subsequently appeared and testified at a hearing held on January 7, 2004, in Danville, Virginia. Although he was fully apprized of his right to be represented by an attorney or other qualified individual, he waived that right and chose to proceed with the hearing unrepresented.

Beard testified that he injured his back in a car accident in 1988 or 1989 and had back surgery in 1992. He also testified that he has no medical insurance and hasn't seen a doctor since 2001 except for one emergency room visit in 2002, when he was prescribed medication. He said that he can lift 10 pounds and walk about 150 yards on level ground, but can't stand very long because of weakness in his legs or sit without moving around frequently. He testified that in a typical day he arises, reads the newspaper, takes a walk, prepares something to eat, and takes a nap around midday. He said that he takes over-the-counter medication but it isn't strong enough to relieve his pain. He testified that two different doctors have suggested putting a rod in his spine to relieve his pain.

The medical evidence in this case consists of a single emergency room record from December 21, 2002, when the claimant complained of intermittent abdominal pain, nausea and diarrhea of about five days duration. He was observed as cooperative, fully responsive and in no distress. His blood pressure was elevated at 169/100. A gastrointestinal examination and laboratory studies were normal. X-rays showed a normal abdomen and mild degenerative changes in the lumbar spine. An examination of the spine, extremities, cardiovascular and respiratory systems were normal, and Beard was neurologically intact throughout. He was administered Cipro 500mg and Bentyl 120 mg for abdominal

pain and diarrhea tentatively diagnosed as gastroenteritis. His hypertension went untreated because he decided to go home before the work-up could be completed.

No physician or other medical source has reported that the claimant has any work-related functional limitations. State Agency medical consultants determined on earlier review that while the claimant had back pain and hypertension, they would not prevent him from performing medium work; that is, work that would not require him to lift more than 50 pounds occassionally and 25 pounds frequently, sit for about six hours in an eight-hour workday and stand and walk for six hours out of eight. They considered the claimant's subjective complaints only partially credible in light of his daily activities, which included walking one-quarter mile a day and sitting and reading without difficulty for three or four hours every night.

## ANALYSIS

### I.  Standard of Review

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## II. The Social Security Act

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairments meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate his residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burden of proof remains with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The Commissioner may meet this burden by relying on the Grids.

## III. The Magistrate's Report and Recommendation

Beard objects to Judge Crigler's Report and Recommendation asserting that the ALJ failed to diligently explore all the relevant facts thus establishing "good cause" to remand the case for further proceedings. Beard asserts that alone the two medical reports entered in the record cannot constitute substantial evidence to deny a claim. Specifically, Beard argues that the first medical report–an emergency room record dated three days before his alleged onset of disability–was "naively submitted" by Beard on his own behalf. (Beard Objection at 2). The second report of record is that of the DDS

4

Case 4:04-cv-00048-JLK-BWC  Document 18  Filed 06/22/05  Page 4 of 6  Pageid#: 62

record review physician ("physician"). Beard argues that as a report of a non-examining physician it cannot constitute substantial evidence to deny a claim because there is no meaningful medical record with which it could be consistent. (Beard Objection at 2). Beard also asserts that it was the ALJ's duty to counsel him as to the need for additional medical evidence which could be viewed as likely to change the ALJ's decision. (Beard's Objections at 2-3).

In determining Beard's residual functional capacity, the ALJ adopted the opinion of the physician who had determined that Beard's back pain and hypertension would not prevent him from performing medium work; that is, work that would not require him to lift more than 50 pounds occasionally and 25 pounds frequently, sit for about six hours in an eight-hour workday and stand and walk for six hours out of eight. This finding was consistent with the only other part of the medical record, an emergency room record from December 21, 2002, in that it revealed nothing that would prevent Beard from performing such medium work. The ALJ also relied on Beard's testimony concerning his daily activities and evidence concerning his past work experience. Also relevant to the ALJ was the lack of any evidence showing that Beard had any greater degree of impairment than was determined by the State Agency physician.

Relying on this evidence, the ALJ performed the required five-step evaluation and made his determinations based on the sequential analysis. At every stage, the ALJ based his determinations on the evidence available to him. Additionally, the ALJ clearly articulates his conclusions specifying the evidence, or lack thereof, he relied upon in making his determinations. Beard asserts that it was the ALJ's duty to counsel him as to the need for additional medical evidence which could be viewed as likely to change the ALJ's decision. (Beard's Objections at 2-3). I disagree. The ALJ's duty is to

5

strictly adhere to the sequential analysis and base his conclusions on the evidence before him. While *pro se* claimants are certainly afforded some degree of latitude in any judicial proceeding, their *pro se* status in no way requires a presiding judge to advise them how to most effectively pursue their claims. Thus, the failure of Beard to provide further additional evidence that may have supported an alternative finding cannot be attributed to a lack of diligence on the part of the ALJ. Therefore, I find that "good cause" does not exist to remand this matter for further proceedings.

## CONCLUSION

For reasons stated herein, I **ADOPT** Judge Crigler's recommendation and **OVERRULE** Beard's objections. The Commissioner's final decision denying Beard's claim for benefits is **ADOPTED.**

Entered this 22nd day of June, 2005

s/Jackson L. Kiser
Senior United States District Judge